DECISION
{¶ 1} Relator, Gerald J. O'Brien, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied him permanent total disability ("PTD") *Page 2 
compensation and to order the commission to find that he is entitled to said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator asserts in his objections that (1) the magistrate erred when it found that the commission's failure to list all the allowed conditions in each claim was not fatal because the commission relied upon the medical report of Dr. Clarence H. Fossier, who considered all of the allowed conditions; and (2) the magistrate erred when it found that Dr. Fossier's report constituted some evidence that relator is capable of performing at a sedentary level despite the fact that Dr. Fossier indicated he believed relator could perform at a light-duty level, because Dr. Fossier's actual findings clearly placed relator within the scope of sedentary work.
 {¶ 4} Relator first contends that the commission's order was flawed because it failed to list all of the allowed conditions in each of his claims. The magistrate found this argument not well-taken, based uponState ex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276. InZollner, the claimant's claim was allowed based upon a work-related back injury and dysthymic disorder. However, the commission later denied PTD. In finding the claimant was able to perform sustained remunerative employment, the commission indicated the claim was recognized for cervical cord contusion with aggravation of a pre-existing cervical spinal stenosis and cervical spondylosis, but it did not mention dysthymic disorder. The commission indicated that its decision was based *Page 3 
upon the reports of Drs. Steiman and Pritscher. The claimant sought a writ of mandamus from this court, claiming the commission abused its discretion because it did not consider his allowed psychiatric condition, dysthymic disorder, as the commission's order did not list the disorder among the allowed conditions. This court denied the writ.
 {¶ 5} Upon appeal, the Ohio Supreme Court also rejected the claimant's contention, finding that the PTD denial was premised on the reports of Drs. Steiman and Pritscher, who evaluated claimant's physical and psychiatric conditions respectively. Thus, the court concluded, the commission clearly took claimant's psychiatric condition into account in denying PTD.
 {¶ 6} Here, the magistrate relied upon Zollner and found the commission specifically relied upon the report of Dr. Fossier, who considered all of the allowed conditions in his report. Relator contendsZollner is inapplicable to the present circumstances, because inZollner there was only one allowed psychiatric condition missing from the order, whereas relator's claims involve multiple allowed conditions and body parts. We find this to be a distinction without a difference. The import of Zollner is that the commission's omission of an allowed condition from its order is insufficient to demonstrate the commission failed to consider all of the allowed conditions when the commission relies upon reports that considered all of the allowed conditions. The court expressly distinguished the facts in Zollner from those cases in which the medical reports upon which the commission relied to deny PTD related solely to the allowed condition mentioned in the commission's order, which would fail to provide any assurance that the commission indeed considered all allowed conditions. Id., at 277-278.
 {¶ 7} In the present case, the commission relied upon Dr. Fossier's report, in which Dr. Fossier considered all of the allowed conditions, thereby providing assurance *Page 4 
that the commission considered all of the allowed conditions. However, relator contests whether Dr. Fossier considered all of the allowed conditions in his report. To the contrary, Dr. Fossier listed all four claim numbers in his report and discussed the surgeries associated with the various injuries involving all of the claims. For example, Dr. Fossier noted relator sustained injury to his head, neck, ribs and knee in 1997, resulting in arthroscopic knee surgery in 1998 and rotator cuff surgery in 1998; developed low back pain and underwent a diskectomy in 1999; had an injury to his left knee in 2002; and had a history of left wrist sprain. These injuries and surgeries correspond with relator's allowed conditions. In detailing these surgeries associated with the allowed conditions, Dr. Fossier never noted that any of the surgeries did not involve allowed conditions, which he likely would have noted had they been unrelated to the allowed conditions and excluded from consideration. Dr. Fossier also indicated the physical examination and results related to these injuries. For example, Dr. Fossier noted relator's rotator cuff surgery incision, and examined relator's shoulders, lumbar spine, knees, and left wrist. Therefore, we are convinced Dr. Fossier was aware of all of the allowed conditions. Thus, we find the magistrate properly applied Zollner to the present case.
 {¶ 8} Relator next claims that Dr. Fossier never specifically opined that relator could perform sedentary work, and his opinion that relator could perform light work, with the further limitation that he would be able to vary between sitting and standing "at his own discretion," does not satisfy the statutory criteria for sedentary work. Ohio Adm. Code 4121-3-34(B)(2) defines "sedentary work" and "light work" as:
 (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or *Page 5 
otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 (b) "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 {¶ 9} In the present case, relator contends that Dr. Fossier did not address the "occasionally" element in Ohio Adm. Code 4121-3-34(B)(2)(a), did not define how often relator should be able to alternate between sitting and standing, and did not address the weight restrictions in Ohio Adm. Code 4121-3-34(B)(2)(a). We find these deficiencies do not render Dr. Fossier's report insufficient to constitute some evidence. Initially, it is important to note that a medical report that identifies the worker's exertional category as defined in the Ohio Administrative Code and does not include additional opinions regarding specific restrictions on sitting, lifting, standing, and so forth is still sufficient to constitute some evidence. State ex rel. Ace v. Toyota ofCincinnati Co., Franklin App. No. 03AP-517, 2004-Ohio-3971, at ¶ 30. Thus, a medical report may constitute evidence on which the commission may rely when the physician simply opines the claimant was limited to "sedentary work" and provides no further details of the claimant's various functional restrictions. Id. *Page 6 
 {¶ 10} On the other hand, the commission cannot simply rely on a physician's "bottom line" identification of an exertional category without examining the specific restrictions imposed by the physician in the body of the report. See State ex rel. Owens-Corning Fiberglas Corp.v. Indus. Comm., Franklin App. No. 03AP-684, 2004-Ohio-3841; andState ex rel. Howard v. Millennium Inorganic Chemicals, Franklin App. No. 03AP-637, 2004-Ohio-6603. In both Owens-Corning and Howard, the doctor indicated that the injured worker could perform at a certain strength level, and yet, the rest of the report indicated greater restrictions on the injured worker that would actually render him incapable of performing the strength level work that the doctor had indicated he could perform. This court held in Owens-Corning andHoward that the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength level; rather, the commission must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor.
 {¶ 11} Here, in examining both the exertional level and the physical restrictions detailed by Dr. Fossier, the commission found that Dr. Fossier's report demonstrated that relator would "at least" be able to engage in sedentary work, which is less demanding than light work Dr. Fossier indicated. The commission explained that, although Dr. Fossier indicated that relator would be able to engage in light work activity, the restrictions the doctor placed on relator (i.e., relator should be able to vary between sitting and standing at his own discretion) would not allow him to engage in all types of light-duty work activity because light duty requires walking and standing to significant degree.
 {¶ 12} Although Dr. Fossier did not specifically define how often relator should be able to alternate between sitting and standing, and did not address any weight *Page 7 
restrictions, the fact that Dr. Fossier concluded relator could engage in "light work," consistent with Ohio Adm. Code 4121-3-34(B)(2)(b), is clearly indicative of his opinion that relator could also engage in even more restrictive sedentary work under Ohio Adm. Code 4121-3-34(B)(2)(a). Thus, the commission could rely upon the report to conclude that relator was capable of "at least" sedentary work. Further, it was within the commission's authority to determine that Dr. Fossier's limitation to standing and sitting at relator's "own discretion" rendered relator's physical abilities more consistent with the demands of sedentary work, i.e., sitting "most of the time" and standing for "brief periods of time." See Ohio Adm. Code 4121-3-34(B)(2)(a). The commission was capable of determining that standing and sitting at one's own discretion equates with sitting "most of the time" and standing for "brief periods of time." Therefore, we find relator's objections without merit and overrule such.
 {¶ 13} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 Sadler and Tyack, JJ., concur. *Page 8 
 APPENDIX A MAGISTRATE'S DECISION Rendered on March 17, 2008 IN MANDAMUS {¶ 14} Relator, Gerald J. Obrien, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 9 
("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 15} 1. Relator has sustained four separate work-related injuries and his claims have been allowed for the following:
Claim number 97-409998: "Contusion of right chest wall * * *; abrasion and bruises, torn cartilage to ribs, thoracic strain/sprain, cervical sprain/strain, left rotator cuff tear, right knee strain/sprain, herniated disc L2-L3, herniated disc L5-S1."
Claim number 99-805400: "Herniated disc at L2-3, L5-S1."
Claim number 02-890020: "Left wrist sprain, left shoulder sprain, left knee sprain."
Claim number 02-890130: "Sprain left knee, sprain left wrist, sprain left shoulder."
 {¶ 16} 2. Relator submitted his application for PTD compensation in July 2006. At the time, he was 59 years old and had last worked in April 2005. Relator graduated from high school and has a varied work history including aircraft mechanic in the United States Air Force, machine operator, and an Aero parts machinist. Relator indicated he could read, write, and perform basic math.
 {¶ 17} 3. Relator's application was supported by the May 23, 2006 report of his treating physician, Dr. Darren C. Lewis, who opined that relator was physically incapable of returning to any employment. Dr. Lewis completed a form indicating relator's restrictions as follows: Occasionally lift and carry up to ten pounds; occasionally bend; *Page 10 
never bend and lift; occasionally reach at arm and waist level, but never reach overhead or at knee or floor level; frequently kneel; occasionally climb stairs and ramps, but never climb ladders; never squat or squat and lift; and frequently crawl. In an eight-hour workday, Dr. Lewis indicated relator could sit, stand, and walk each for less than two hours and for one hour without interruption.
 {¶ 18} 4. An independent medical examination was performed by Clarence H. Fossier, M.D. In his December 4, 2006 report, Dr. Fossier listed all four claim numbers; however, at the outset of his report, Dr. Fossier did not list all the allowed conditions in relator's claim. Dr. Fossier noted relator sustained his first injury in 1997, indicated he fell landing on his head, neck, and left shoulder, that he tore cartilage on six ribs, and sustained an injury to his right knee. Dr. Fossier noted relator underwent arthroscopic surgery on the right knee in June 1998, and underwent a surgical repair of a torn rotator cuff in October 1998. Dr. Fossier noted that in February 1999, relator developed low back pain and sciatica and underwent a diskectomy at L2-3 and L5-S1 in June 1999. Dr. Fossier noted relator had an injury to his left knee in December 2002, but did not have surgery for this injury. Thereafter, Dr. Fossier inspected relator's shoulders and noted he had full range of motion of both shoulders, both actively and passively with crepitus. There was no loss of rotator cuff strength, but relator did have impingement signs on the right side, which produced complaints of pain. Dr. Fossier examined relator's lumbar spine and provided his range-of-motion findings. Dr. Fossier indicated straight leg raising while sitting did not result in pain, but that supine straight leg raising yielded low back pain at 60 degrees on the right and 40 degrees on the left. Dr. Fossier noted relator had full range of motion of his hips, knees, and ankles, and that both knees have a degree of *Page 11 
genu valgum. Relator had full range of motion with crepitus and no ligamentous laxity. Dr. Fossier examined left shoulder x-rays performed in 2005 and spinal MRIs performed in 2004 and 2005. Ultimately, Dr. Fossier concluded relator had a 13 percent impairment for his lumbar spine, a five percent impairment for his cervical spine, a five percent impairment for his rotator cuff injury, and a two percent impairment for his left knee. All together, Dr. Fossier opined relator had a 22 percent whole body impairment, was capable of performing light-duty work provided he was able to vary between sitting and standing at his own discretion.
 {¶ 19} 5. Two vocational reports were submitted. Howard L. Caston, Ph.D., concluded that relator could return to some form of sedentary employment while Robert E. Breslin, M.S., concluded that relator would not be able to return to any employment.
 {¶ 20} 6. Relator's motion was heard before a staff hearing officer ("SHO") on July 2, 2007. At the outset, the SHO only listed the conditions allowed in one of relator's claims: "sprain left knee; sprain left wrist; sprain left shoulder." The SHO relied upon the medical report of Dr. Fossier and found that relator would be able to perform at a sedentary work level. Thereafter, the SHO examined the nonmedical disability factors. The SHO found that relator's current age of 60 years was a negative factor but that it was outweighed by relator's positive educational and work history. (Stipulation at 1-3.)
 {¶ 21} 7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought *Page 12 
and that the commission has a clear legal duty to provide such relief.State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v.Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 24} In this mandamus action, relator argues that the commission abused its discretion by not considering all of his allowed conditions in all four claims in determining that he was not permanently and totally disabled. Relator also contends that the report of *Page 13 
Dr. Fossier does not constitute some evidence upon which the commission could rely in finding that he was capable of sedentary work because Dr. Fossier actually opined that relator could perform light-duty work. For the reasons that follow, it is this magistrate's conclusion that the court should deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 25} A similar situation occurred in State ex rel. Zollner v. Indus.Comm. (1993), 66 Ohio St.3d 276. In that case, the claimant's claims were allowed for both physical and psychological conditions. In its order denying the claimant PTD compensation, the commission only listed the allowed physical conditions and omitted any reference to the allowed psychological condition.
 {¶ 26} In mandamus, the claimant argued that the commission did not consider his allowed psychological condition. The Supreme Court of Ohio disagreed because the commission specifically relied upon a medical report which addressed the claimant's psychological condition. Because the medical reports relied upon specifically addressed all of the claimant's allowed conditions, both physical and psychological, the court found that the commission had clearly taken claimant's allowed psychiatric condition into account in denying him PTD compensation.
 {¶ 27} As in Zollner, the commission specifically relied upon the report of Dr. Fossier. Because the magistrate finds hereinafter that Dr. Fossier did consider all the allowed conditions and that his report constitutes some evidence, the magistrate finds that the commission's failure to list all the allowed conditions is not fatal because of the commission's reliance upon a medical report that did consider all the allowed conditions. *Page 14 
 {¶ 28} With regard to relator's second argument, that Dr. Fossier's report does not constitute some evidence upon which the commission could rely to find that he was capable of performing at a sedentary level, this magistrate disagrees. Upon review of the physical findings upon examination made by Dr. Fossier and the restrictions he placed on relator, Dr. Fossier's report does constitute some evidence that relator is capable of performing at a sedentary level in spite of the fact that Dr. Fossier indicated that he believed relator could perform at a light-duty level. Because Dr. Fossier's actual findings clearly place relator within the scope of sedentary work, the fact that he stated relator could perform light-duty work does not disqualify his report from consideration. The commission read the report and saw that the physical findings and restrictions equated with sedentary work and relied upon his report. The magistrate finds that this was not an abuse of discretion.
 {¶ 29} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion by relying upon the report of Dr. Fossier, who had considered all the allowed conditions, and this court should deny relator's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1