[Cite as *State ex rel. Arnold v. Bur. of Workers' Comp.*, 2014-Ohio-1957.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Brenda Arnold, | : | |
| Relator, | : | |
| | | No. 13AP-355 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Bureau of Workers' Compensation and Industrial Commission of Ohio, | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 8, 2014

*Regas & Haag, Ltd.,* and *John S. Regas,* for relator.

*Mann & Carducci Co., LPA, Jay Hurlbert*, and *Robert Mann,* Special Counsel for respondent Bureau of Workers' Compensation.

*Michael DeWine*, Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Brenda Arnold ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied permanent total disability ("PTD") compensation and to enter an order granting said compensation.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the

appended decision, including findings of fact and conclusions of law, and recommended that this court deny claimant's request for a writ of mandamus. Claimant has filed objections to the magistrate's decision.

{¶ 3}   In her objections, claimant reiterates the arguments she presented to the magistrate. Claimant argues in her first objection that the magistrate erred when she found that the staff hearing officer ("SHO") appropriately analyzed the additional restrictions set forth by Dr. Naomi Waldbaum. Specifically, claimant asserts that the SHO completely failed to address how the additional restrictions set forth by Dr. Waldbaum would affect her ability to perform light and sedentary work. We disagree. Although we agree that the commission must review a doctor's report and make certain that any physical restriction indicated by a doctor corresponds with the ability to perform at the exertional level indicated by the doctor, as we held in *State ex rel. O'Brien v. Cincinnati, Inc.,* 10th Dist. No. 07AP-825, 2008-Ohio-2841, claimant fails to cite any authority for the proposition that the commission must make a specific finding or explicitly indicate it performed an analysis regarding such in its order. The magistrate found that Dr. Waldbaum's additional restrictions were not inconsistent with the definitions of sedentary and light work. Given there was no conflict between Dr. Waldbaum's report and the definitions of sedentary and light work, it was proper for the magistrate to conclude Dr. Waldbaum's report provided some evidence to support the SHO's decision. Therefore, we overrule claimant's first objection.

{¶ 4}   Claimant argues in her second objection that the magistrate erred when she found that the additional restrictions set forth by Dr. Waldbaum are consistent with the ability to perform light and sedentary work. Claimant argues that both work levels, according to their regulatory definitions, require an individual to exert a certain amount of force and include some element of pushing and pulling, while Dr. Waldbaum indicated that claimant could not push or pull or perform repetitive movements with her hands, wrists, and fingers.

{¶ 5}   However, the magistrate concluded that the commission did not err because claimant could perform some level of light and sedentary work. With regard to sedentary work, the magistrate found that there are sedentary jobs that do not require any repetitive hand/wrist/finger movements or pushing and pulling with upper extremities; thus,

claimant can perform those jobs. With regard to light work, the magistrate found that there are jobs that fit within Dr. Waldbaum's additional restrictions because light work can include jobs that would be otherwise sedentary but that require walking or standing to a significant degree; thus, because claimant can perform some sedentary jobs and she had no walking or standing restrictions, there are also light jobs she can perform.

{¶ 6} Although claimant complains that it is difficult to understand how the magistrate could find that Dr. Waldbaum's restrictions would not significantly compromise or completely erode an individual's ability to do light and sedentary work, the magistrate did not make such a finding. Undoubtedly, the restrictions listed by Dr. Waldbaum would significantly affect one's work abilities. What the magistrate found was that, despite these significant restrictions, there still exist jobs within the limitations of the definitions for light and sedentary work. Furthermore, despite claimant's contention that both sedentary and light work necessarily require pushing and pulling, claimant provides no authority to support such conclusion. For these reasons, we must overrule claimant's second objection.

{¶ 7} Claimant argues in her third objection that the magistrate erred when she found that Dr. Waldbaum's restrictions are specific and not ambiguous or vague. The magistrate distinguished *State ex rel. Seitaridis v. Indus. Comm.,* 10th Dist. No. 10AP-494, 2011-Ohio-3593, by finding the doctor's restrictions in *Seitaridis* were ambiguous, while Dr. Waldbaum's restrictions were specific. Claimant contends that Dr. Waldbaum's use of "repetitive" was likewise vague because the definitions of light and sedentary work refer to "occasional" and "frequent," so it is unclear whether Dr. Waldbaum meant "repetitive" to be occasional, frequent or constant. However, such a distinction is not relevant in this case. Whether Dr. Waldbaum meant "repetitive" to include repetitive movements at all three frequencies does not alter the magistrate's finding that jobs existed that did not require any repetitive hand/wrist/finger movements or pushing and pulling with upper extremities. Therefore, this argument is without merit.

{¶ 8} Claimant also argues that the facts in *Seitaridis* are identical to those in the present case, and *Seitaridis* stands for the proposition that it is legal error for an SHO to fail to analyze how upper extremity limitations would limit an individual's ability to perform light work activity. We disagree with claimant's contention. Although we stated

in *Seitaridis* at ¶ 16 that "the magistrate erred in not addressing the fact that the SHO failed to analyze how or if upper extremity limitations would limit relator's ability to perform light-work activity," the error was caused by the fact that the doctor's statement "restrictions limited with use of right upper extremity" was vague, and we did not know whether the "restrictions" referred to meant those outlined in the regulatory definitions of sedentary and light work. *Id.* at ¶ 6. The word "restrictions" was important because the commission must base its decision on the specific restrictions imposed by the physician in the body of the report rather than merely the exertional category identified by the doctor. *Seitaridis* at ¶ 14, citing *State ex. rel. Howard v. Millennium Inorganic Chemicals*, 10th Dist. No. 03AP-637, 2004-Ohio-6603. Unable to determine whether "restrictions," as used by the doctor in *Seitaridis*, referred to the restrictions included in the regulatory definitions of sedentary and light work, we found the magistrate erred by not addressing the SHO's failure to analyze how or if upper extremity limitations would limit the claimant's ability to perform light work activity.

{¶ 9} However, the same vagueness problem is not present here. In the current matter, Dr. Waldbaum's additional limitations clearly referred to the restrictions provided in the regulatory definitions of light and sedentary work. Because Dr. Waldbaum's limitations were clear, in this respect, neither the commission nor the magistrate were required to further analyze whether Dr. Waldbaum's limitations would limit claimant's ability to perform sedentary and light work. In this case, we know Dr. Waldbaum opined that these limitations would limit claimant's ability. The commission and the magistrate both found that, however, these limitations did not fully preclude sedentary or light work. Therefore, this argument is without merit, and claimant's third objection is overruled.

{¶ 10} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of claimant's objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. Claimant's writ of mandamus is denied.

*Objections overruled; writ of mandamus denied.*

SADLER, P.J., and TYACK, J., concur.

_____

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Brenda Arnold, | : | |
| Relator, | : | |
| v. | : | No. 13AP-355 |
| Bureau of Workers' Compensation and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

### MAGISTRATE'S DECISION

#### Rendered on February 11, 2014

*Regas & Haag, Ltd.,* and *John S. Regas,* for relator.

*Mann & Carducci Co., LPA, Jay Hurlbert* and *Robert Mann,* for respondent Bureau of Workers' Compensation.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 11} Relator, Brenda Arnold, has filed this original action requesting that this court issue a writ of mandamus ordering respondent the Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to grant her that compensation.

Findings of Fact:

{¶ 12} 1. Relator sustained a work-related occupational injury with a date of diagnosis of January 28, 2002. Her workers' compensation claim has been allowed for the following conditions:

> Right biceps tendonitis; right elbow lateral epicondylitis; bilateral carpal tunnel syndrome; dequervains syndrome, right; trigger finger left fourth finger; trigger finger right thumb; radial styloid tenosynovitis, left.

{¶ 13} 2. Relator has undergone four surgeries. Specifically, in 2002, relator underwent bilateral carpal tunnel surgery; in 2004, she underwent De Quervain's surgery of trigger finger; in 2007, she underwent trigger finger release on right; and in 2010, she underwent trigger release of her right thumb. Relator underwent physical therapy after her surgeries and uses bilateral wrist splints.

{¶ 14} 3. Because of increasing difficulties performing her tasks as an administrative secretary, relator took an early retirement in December 2011.

{¶ 15} 4. Relator filed her application for PTD compensation on August 24, 2012.

{¶ 16} 5. In support of her application, relator submitted the June 6, 2012 report of her treating physician Sean Zimmer, M.D., who stated as follows:

> Brenda Arnold has been seen over the last two years with significant overuse syndrome that has included bilateral de Quervain's teonosynovitis along with bilateral carpal tunnel syndrome and hand triggering. These conditions have been significantly disabling. She has undergone significant operative treatment in the past, but has had continued symptoms. Any type of reparative labor is giving her significant disability. She has had repeated injection and had kept her symptoms at bay, but if any type of reparative work is undertaken it will be very difficult and it will significantly exacerbate her symptoms. She has underlying arthritic changes in both hands and at her age it is my opinion that she will not be able to entertain any significant future employment.

{¶ 17} 6. Relator also submitted a report from Timothy Lee Hirst, M.D. In his July 12, 2012 report, Dr. Hirst identified the medical records which he reviewed, and provided the following relevant objective findings:

Attention to the right wrist shows a 2.6 cm scar from surgery. There is pain over the radial side of the wrist. The Color, temperature, and hair growth of the hand are otherwise normal except for some coolness of the distal fingers and thumb. There are no sores on the skin and the nails are normal. The wrist measures 17 cm. The Range of Motion of the wrist shows a Plantar-Flexion of 31 degrees, an Extension of 43 degrees, a Radial Deviation of 11 degrees, and an Ulnar Deviation of 13 degrees. The grip strength is 37.34, and 31 Lbs. There is no sensory loss along the radial and ulnar-sided digital nerves.

Attention to the left wrist shows 3 cm scar from surgery. The Color, temperature, and hair growth of the hand are otherwise normal except for some coolness of the distal fingers and thumb. There are no sores on the skin and the nails are normal. The wrist measures 17.2 cm. The Range of Motion of the wrist shows a Plantar-Flexion of 18 degrees, an Extension of 31 degrees, a Radial Deviation of 7 degrees, and an Ulnar Deviation of 8 degrees. The grip strength is 14.12, and 11 Lbs. There is no sensory loss along the radial and ulnar-sided digital nerves.

The Range of Motion of the right thumb shows an IP Joint Flexion of 46 degrees. IP Joint extension of 14 degrees. MP Joint Flexion of 39 degrees, MP Joint Extension of (-8) degrees. Adduction Lack of +1 cm. Abduction of 35 degrees, and Opposition Lack of 0 cm.

The Range of Motion of left ring finger shows a DIP Joint Flexion of 51 degrees and Extension of 0 degrees, a PIP Joint Flexion of 72 degrees and Extension of 0 degrees, an MP Joint Flexion of 61 degrees, and an MP Joint Extension of 16 degrees. The Color, temperature, and hair growth of the hand are otherwise normal.

Dr. Hirst noted that relator had the following functional capabilities:

Lifting/Gripping is limited to 5 lbs occasionally with a maximum of 10 lbs. rarely. Carrying/Gripping is limited to 5 lbs occasionally with a maximum of 10 lbs. rarely[.]

She drops things frequently due to pain and sudden loss of strength.

Self Care: Limited for hair care, she cannot grip a back brush, she has trouble with buttons and zippers, etc[.]

Inside House: Light Housework for short periods as dusting. She cannot prepare meals. She can wash only a few dishes without pain and a long rest.

Outside: No yard work[.]

Sleep: Very interrupted with the hand, elbow, and upper extremity pains. She often required a sleep aid as Ambien to get to sleep due to the pain[.]

Drive: She can drive for 30-45 minutes, but it is painful to grip the wheel. Normally [s]he does not drive unless there is an urgent need and relies on others to transport her. Her hands go numb frequently during driving.

{¶ 18} Ultimately, Dr. Hirst concluded that relator was permanently and totally disabled, stating:

**Discussion**

The claimant has conditions which are permanent. She has had 4 hand surgeries and she continues to worsen in terms of function and pain. Because they involve both upper extremities, she has been severely limited by these conditions. She has trouble with pain in the upper extremities, especially the hands, with any use or grasping. She has lost substantial strength and as such cannot grip well and drops things many times a days [sic]. Bending causes such pain that she [sic] it wakes her at night and she is chronically tired. With thumb and wrist involved, she has almost no grip opposing the thumb and index finger. As such, she has trouble with many self care items. She can do so little work that there is no reasonable employer who would hire her for any work that she could do. The sudden pain and dropping things would make her a hazard for herself and others in a work environment.

**Conclusion**

This claimant has an injury that is permanent and for which there is no curative therapy. This claimant has progressively suffered loss of function and has had to endure progressively more pain. The exam above shows that there is so little functional capacity and that the claimant is so affected by her condition and its required care, that there is no capacity for

sustained remunerative employment and that there is no reasonable employer that would ever hire the claimant expecting any work capacity.

{¶ 19} 7. Relator was examined by Robert F. Shadel, M.D. In his September 20, 2012 report, Dr. Shadel identified the medical records which he reviewed and provided the following relevant physical findings:

> Examination of wrist shows bilateral flexion of 50 degrees and extension 40 degrees. Her strength is near normal at 5-forward flexion and extension. She has a well-healed anterior surgical scars and lateral right wrist surgical scar. Median nerve compression reveals no median nerve distribution symptoms at all with only some noted numbness-type sensation right over the incisions at the carpal tunnel region only. Tinel's testing is negative at each median nerve at the wrist. She has a negative Finkelstein's test bilaterally. Her thumb flexion and extension and abduction is at full strength bilaterally. She has no thumb deformities and has near normal motion with 80 degrees of MP joint flexion and IP flexion of 50 degrees and full extension.
>
> Throughout all her digits of both hands, there is no triggering with repetitive flexion and extension of all her digits. She has no deformities or significant loss of hip flexion or extension at her MP, PIP, or DIP joints of each her digits in both hands. Strength testing shows 5-finger grip strength bilaterally, full lateral pinch of 5 bilaterally, and decreased tip pinched bilaterally of 4 only.
>
> Ms. Arnold has minimal ongoing findings of bilateral carpal tunnel syndrome manifested by mild decreased two-point discrimination that is now worse than her ulnar or radial nerves. She has negative provocative median nerve testing at the wrist. She has only decreased tip pinch bilaterally.
>
> Ms. Arnold has no objective findings of any ongoing right de Quervain's syndrome with negative Finkelstein's test. No swelling or tenderness over either thumb extensor or abductor tendon and with no significant loss of strength or function.
>
> Ms. Arnold has no findings of any trigger finger in her left fourth finger or right thumb at all following successful surgical treatment of each of these conditions.

Finally, Ms. Arnold has no ongoing objective findings of any left radial styloid tenosynovitis with negative Finkelstein's test and negative objective findings of any pain, swelling, or tenderness or dysfunction of thumb extensor or abductor tendon.

Thus, for the allowed claim conditions, Ms. Arnold has no disabling conditions. She is quite capable of returning to sustained remunerative employment in numerous jobs. Her only necessary permanent restrictions are repetitive and forceful pinching.

{¶ 20} Thereafter, Dr. Shadel opined that relator's allowed conditions had reached maximum medical improvement ("MMI"), found that she had no disabling conditions and was capable of returning to sustained remunerative employment in numerous jobs. He noted that her only necessary permanent restrictions consisted of no repetitive and forceful pinching.  Dr. Shadel concluded that she was not permanently and totally disabled.

{¶ 21} 8. Relator was also examined by Naomi Waldbaum, M.D.  In her November 20, 2012 report, Dr. Waldbaum identified the medical records which she reviewed, and provided the following objective findings:

Evaluation of the upper extremities reveals normal reflexes. There is mild diminished perception to pin prick over the volar surface of the distal fingers in both hands. There are negative Tinels at the wrists and the elbows. She is able to put both hands behind her head and behind her back in a functional manner. There is slight tightness at the wrist with no crepitation, pain or diminished range of motion noted. Both elbow joints show no diminished range of motion or crepitation but she did complain of mild discomfort on the right on flexion/extension at the elbow. She has -5 degrees of full wrist extension with normal flexion, inversion and eversion. She is able to hold a bulb dynamometer which measures 20 on the right, 15 on the left, with a lot of straining. She is able to oppose the thumbs to second, third, fourth, and fifth fingers after several tries. There was no weakness in finger abduction/adduction. Extending the right wrist she did complain of discomfort along the dorsal forearm and there is sensitivity on palpation with slight nodularity suggesting chronic De Quervain's tenosynovitis. Similar findings are minimal on the left.

{¶ 22} Dr. Waldbaum noted that relator's carpal tunnel syndrome and trigger finger conditions had been successfully treated. She opined that relator was wearing inappropriate braces and that, if appropriate braces were used, her De Quervain's syndrome might quiet down. Dr. Waldbaum also noted that relator did have symptoms on the left side, but had declined further carpal tunnel syndrome surgery. As such, she opined that relator's allowed conditions had reached MMI. Dr. Waldbaum was unable to use the grip strength measurement table to estimate relator's impairment because, in her opinion, relator appeared to be exerting less than maximal effort. Dr. Waldbaum opined that relator had a 6 percent whole person impairment and that she could perform sedentary work with the following limitations:

> No repetitive hand/wrist/finger movements[.] No push[/] pull movements with [upper extremities].

{¶ 23} 9. Relator's application was heard before a staff hearing officer ("SHO") on February 13, 2013. The SHO relied on and discussed Dr. Waldbaum's report, stating:

> The Injured Worker contracted an occupational disease while working as an executive secretary for the Bureau of Workers' Compensation. The Injured Worker suffered right and left upper extremity problems. The Injured Worker was examined by Naomi Waldbaum, M.D. on 11/20/2012. Dr. Waldbaum issued a report on 11/26/2012. Dr. Waldbaum notes the Injured Worker underwent bilateral carpal tunnel syndrome release surgery and also had surgery for trigger finger of the left fourth finger and right thumb. The Injured Worker also underwent surgery for Dequervain's Syndrome. Dr. Waldbaum notes the Injured Worker wears splints when she drives and during the evenings. Dr. Waldbaum notes the Injured Worker is able to drive an automobile and the Injured Worker testified that she does drive. The Injured Worker further testified she takes martial arts classes once per week. Dr. Waldbaum assigned a 6% whole person impairment and completed a physical strength rating report on 11/26/2012. Dr. Waldbaum finds the Injured Worker retains the ability to perform light work activity with the following restrictions: no repetitive hand/wrist/finger movements, no pushing and pulling movements with her upper extremities. The opinion of Dr. Waldbaum is found persuasive and is supported by her physical findings. Thus, the Staff Hearing Officer concludes the Injured Worker can perform light and sedentary work activity with the additional restrictions outlined by Dr. Waldbaum.

Light work activity is defined as follows: Light Work means exerting up to 20 pounds of force occasionally and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: 1) when i[t] requires walking or standing to a significant degree; or 2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls, and/or 3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

{¶ 24} Thereafter, the SHO addressed the non-medical disability factors and concluded that relator was capable of performing some sustained remunerative employment within the restrictions of no repetitive hand/wrist and finger movement and no push/pull with upper extremities as set forth by Dr. Waldbaum.  Specifically, the SHO stated:

The Injured Worker is 63 years of age. Many employers prefer seasoned workers with maturity and experience. Moreover, age alone is never a total bar to employment.

The Injured Worker's education level is a positive factor. The Injured Worker graduated from high school. Possession of a high school diploma is an asset in the work force and evidences the Injured Worker's mental acumen to complete basic tasks associated with entry-level sedentary and light work. Additionally, the Injured Worker reported on the IC-2 application that she can read, write, and perform basic math equations. These skills are helpful in the performance of entry-level sedentary and light work.

Additionally, the Injured Worker testified she completed classes after high school and obtained her associates degree in 1968 from Finn College. The Injured Worker testified this degree was for secretarial science. The ability for the Injured Worker to complete college level classes is a positive factor. Generally, individuals with this level of education are able to successfully perform basic tasks associated with entry-level sedentary and light employment.

The Injured Worker's work experience is also a positive factor. The Injured Worker was able to use her post high school education in secretarial science in her chosen profession as a secretary. The Injured Worker worked as a legal secretary from 1968 through 1975. She also worked as a secretary for a seven step foundation in 1978. The Injured Worker also worked as a secretary for a United Labor Agency from 1978 through 1981. Lastly, the Injured Worker testified she worked as an Administrative Secretary from 1982 through 2011. It is significant that the Injured Worker reported that she worked as a supervisor for the named Employer, reporting that she supervised up to fifteen employees.

The ability to direct and control others is a positive temperament in an employment setting. Clearly, the Injured Worker has a solid, lengthy history of employment of over 40 years, including supervisory experience. This accomplishment is evidence of the Injured [W]orker's strong work ethic.

The Injured Worker testified she performed a host of job duties, including: shorthand, typing, filing, scheduling appointments, and preparing letters. The Injured Worker used a computer in her job as well as other various office equipment. The Injured Worker testified she currently has a computer in her home. The Injured Worker reported that she has knowledge of basic computer programs. The Injured Worker's work history is a positive factor. The Injured Worker has demonstrated numerous positive temperaments in her skilled and highly skilled positions, including: performing a variety of tasks, performing detailed work, proofreading, editing and grammatical skills, verbal communication skills, telephone communication skills, the ability to learn computer programs, supervising and controlling others, and clerical and form perception abilities.

Given the Injured Worker's completion of college level course work, a solid work history consisting of skilled and highly skilled positions in a supervisory role, the Staff Hearing Officer finds the Injured Worker retains the basic skills necessary to complete entry-level sedentary and light work within the restrictions outlined by Dr. Waldbaum. Accordingly, the Injured Worker's disability is not total in nature and the application for permanent and total disability benefits is denied.

{¶ 25} 10. Relator's request for reconsideration was denied by order of the commission mailed April 10, 2013.

{¶ 26} 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 27} Relator contends that the commission abused its discretion by failing to evaluate how the additional restrictions noted by Dr. Waldbaum are consistent with an ability to perform light and sedentary work. Relator contends that the additional restrictions are inconsistent with an ability to perform light and sedentary work.

{¶ 28} The magistrate finds that the situation presented here is distinguishable from the situations presented in the cases which relator cites. Therefore, as will be discussed below, the magistrate finds that relator's argument is not well taken.

{¶ 29} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 30} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 31} Ohio Adm.Code 4121-3-34(B)(2)(a) states:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or

> otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 32} When reading the above definition for sedentary work, it must be remembered that a job is classified as "sedentary" provided that the job does not require a person to exert more than ten pounds of force occasionally *and/or* a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects.  Not all sedentary jobs require a person to lift ten pounds of force occasionally; however, a job cannot be classified as sedentary if it requires one to exert more than ten pounds of force occasionally.

> (b) "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

{¶ 33} When reading the above definition of light work, it must be remembered that a job is classified as "light" provided that the job does not require a person to exert more than 20 pounds of force occasionally, *and/or* up to 10 pounds frequently, *and/or* a negligible amount of force constantly.  A job is still considered light when it requires a significant amount of standing or walking, *or* sitting most of the time while using arm/leg controls, *and/or* requires working at a production pace with constant pushing *and/or* pulling.

{¶ 34} The SHO relied exclusively upon the medical report of Dr. Waldbaum who opined that relator was capable of performing at sedentary and light-duty levels with the following restrictions:   (1) no repetitive hand/wrist/finger movements, and (2) no push/pull movements with her upper extremities.  Relator cites this court's decision in *State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-

Ohio-6603, for the proposition that the commission cannot simply rely on a physician's "bottom line" classification of an exertional capacity, but the commission must also consider the specific restrictions imposed by the physician. *Id.* at ¶ 9. Where a physician imposes specific restrictions, "the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength level; rather, the commission must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor." *State ex rel. O'Brien v. Cincinnati Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841, ¶ 10.

{¶ 35} In *Howard,* the commission relied on the report of John Dobrowski, M.D., who opined that Howard's overall impairment could easily be set at 90 percent of the whole person. He found that Howard had a severe breathing impairment that, by itself, rendered him more than 50 percent disabled, and he further opined that the shortness of breath was aggravated by activities beyond personal cleansing, grooming, and the equivalent. Dr. Dobrowski also gave a detailed description of Howard's substantial incapacities in speech, which caused additional impairment. On an accompanying checklist form, Dr. Dobrowski indicated that Howard was "capable of physical work activity" and indicated that Howard was capable of activity at the sedentary level. *Id.* at 18.

{¶ 36} This court agreed with its magistrate who found that the restriction-related findings contained in Dr. Dobrowski's report seemed inconsistent with the possibility of Howard maintaining sustained remunerative employment. This court applied the decision from *State ex rel. Libecap v. Indus Comm.*, 83 Ohio St.3d 178 (1998) and stated:

> *Libecap* has been cited for the proposition that, "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible * * * then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." *State ex rel. Owens Corning Fiberglass v. Indus. Comm.,* 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. The "commission cannot simply rely on a physician's 'bottom line' identification of an exertional category but must base its decision on the specific

restrictions imposed by the physician in the body of the report." Ibid. The court in *Owens Corning* went on to explain:

In *Libecap,* the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the *commission's* finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.

Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment.

Id. at ¶ 56-57. (Emphasis sic.)

"[F]unctional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the 'sedentary' category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment." *State ex rel. Clevite Elastomers v. Torok,* 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14.

*Howard,* at ¶ 9-10.

{¶ 37} Relator maintains that Dr. Waldbaum's restrictions preclude an ability to perform light-duty work because "virtually the whole definition of light work activity involves pushing or pulling of objects" and "if an individual has no ability to push or pull, * * * and an individual has no ability to repetitively use their hands, wrists or fingers," there are virtually no sedentary or light exertional jobs that they can perform.

{¶ 38} In reviewing the definitions of both sedentary and light-duty work, it must be remembered that these definitions constitute the upper limits of the force required in

a job for that job to still be considered sedentary or light by definition. *See State ex rel. Boyle v. Indus. Comm.,* 10th Dist. No. 02AP-647, 2003-Ohio-581. Dr. Waldbaum's restrictions are not inconsistent with the definitions of sedentary and light work. The upper limits of sedentary work involve exerting up to ten pounds of force occasionally (up to one-third of the time) and/or a negligible amount of force frequently (one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects.

{¶ 39} Dr. Waldbaum's restrictions involve no repetitive hand/wrist/finger movements and no pushing or pulling with relator's upper extremities. Considering the definition of sedentary work, the magistrate finds that the restrictions of Dr. Waldbaum are not inconsistent with that definition and to the extent that the commission found that relator was capable of performing at a sedentary level, the commission did not abuse its discretion in finding that there are sedentary jobs which can be performed and which do not require any repetitive hand/wrist/finger movements or pushing and pulling with upper extremities.

{¶ 40} Relator's strongest argument involves her assertion that the restrictions preclude her from performing light work. Relator believes that virtually the whole definition of light work activity involves pushing or pulling of objects. A review of the definition of light work reveals that is not true. The upper limits of light work mean exerting up to 20 pounds of force occasionally *and/or* up to 10 pounds of force frequently, *and/or* a negligible amount of force constantly to move objects. Jobs are rated light work which (1) require walking or standing to a significant degree; **or** (2) require sitting most of the time, **but** involve pushing *and/or* pulling of arm or leg controls; *and/or* (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials.

{¶ 41} The magistrate finds that the plain definition of light work would include jobs that would otherwise be considered sedentary, but which require walking or standing to a significant degree. Contrary to relator's assertions, pushing and/or pulling of arm or leg controls is not required and is only considered if the job requires sitting most of the time. Relator has no restrictions concerning standing or walking. A job can be classified as light duty and not require any pushing and/or pulling nor using a negligible amount of force constantly.

{¶ 42} Relator contends that the factual situation in her case is virtually identical to the factual situation presented in *State ex rel. Seitaridis v. Delta Plating, Inc.,* 10th Dist. No. 10AP-494, 2011-Ohio-3593. For the reasons that follow, the magistrate disagrees.

{¶ 43} In finding that Spiros Seitaridis was not entitled to an award of PTD compensation, the commission relied on a report by Dr. Bond indicating that he could perform light work and stating only: "restrictions limited with use of right upper extremity." *Id.* at ¶ 6. Seitaridis argued that the SHO failed to analyze how upper extremity limitations would limit his ability to perform light work activities. After citing *Howard*, this court reiterated that, where the physician imposes specific restrictions, the commission is required to review the doctor's report and make certain that any physical restrictions the doctor provided correspond with an ability to actually perform at the exertional level indicated by the doctor. This court specifically found that Dr. Bond's restrictions of "limited with use of right upper extremity" was "ambiguous and vague." *Id.* at ¶ 15. This court stated further:

> The commission ultimately concluded that relator could perform "nearly a full range of light work." We note that "light work" involves either "exerting up to twenty pounds of force," or "exerting up to ten pounds of force," "moving objects," "pushing and/or pulling or arm * * * controls," or "constant pushing and/or pulling of materials." See Ohio Adm.Code 4121-3-34(B)(2)(b). The commission also concluded that relator could perform a "full range of sedentary work." "Sedentary work" involves either "exerting up to ten pounds of force," or "exerting a negligible amount of force * * * to lift, carry, push, pull or otherwise move objects." See Ohio Adm.Code 4121-3-34(B)(2)(a). This court questions whether these are the restrictions to which Dr. Bond refers in noting "restrictions limited with use of right upper extremity," and whether relator's impaired range of motion, muscle strength (grip) or sensation prohibit him from engaging in these activities. We do not know the answer to these questions. Nor can we hypothesize answers as neither we, nor the magistrate, are medical experts trained to interpret the physician's findings.

*Id.* at ¶ 16.

{¶ 44} Because Dr. Bond did not explain what the right upper extremity restrictions were, this court found the restrictions ambiguous and vague and, because we are not medical experts trained to interpret the physician's findings, this court would not speculate as to what Dr. Bond meant.

{¶ 45} As noted previously, Dr. Waldbaum's restrictions are not ambiguous and vague; instead, they are specific. Further, the magistrate finds that those restrictions do not preclude relator from being able to perform sedentary or light-duty work and that no further explanation was required.

{¶ 46} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied her application for PTD compensation and this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).