[Cite as *State ex rel. Freedom Ctr. v. Indus. Comm.*, 2024-Ohio-1376.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Freedom Center, State of Ohio,   :

      Relator,                    :           No. 22AP-87

v.                              :       (REGULAR CALENDAR)

Industrial Commission of Ohio et al.,   :

      Respondents.          :

---

D E C I S I O N

Rendered on April 11, 2024.

---

**On brief:** *Mann & Carducci Co., LPA*, and *Robert J. Mann*, and *Mark M. McCarthy*, for relator. **Argued:** *Robert J. Mann.*

**On brief:** *Dave Yost*, Attorney General, and *Anna I. Isupova*, for respondent, Industrial Commission of Ohio. **Argued:** *Anna I. Isupova.*

**On brief:** *Lelli Law Office*, and *Craig T. Lelli*, and *Anthony T. Lelli*, for respondent, Debra J. Singletary. **Argued:** *Anthony T. Lelli.*

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Freedom Center, State of Ohio ("Freedom Center"), seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("Commission"), to vacate its order granting permanent total disability ("PTD") compensation to respondent, Debra J. Singletary.

{¶ 2} This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of

law, which is appended hereto. The magistrate determined that the Commission did not abuse its discretion in granting Singletary's application for PTD benefits and has recommended that this court deny Freedom Center's request for a writ of mandamus.

{¶ 3} Freedom Center has filed the following objections to the magistrate's decision:

> [1.]     The Magistrate erred in finding the record contains "some evidence" to support the Industrial Commission's approval of Respondent Debra Singletary's application for Permanent Total Disability ("PTD").

> [2.]     The Magistrate erred in holding that the Commission's reliance on the report of James Bartczak, and the Staff Hearing Officer's own speculation and medical conclusions as to matters not contained in the record only applied to issues pertaining to the apportionment of the award between Singletary's claims, and/or were harmless error.

> [3.][1]     The Magistrate erred in holding there was "some evidence" to support the Commission's approval of Singletary's application for PTD when there is evidence in the record of activities so medically inconsistent with the disability evidence, that they impeach the medical evidence underlying the award.

{¶ 4} Because Freedom Center has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). In order for this court to issue a writ of mandamus as a remedy from a determination of the Commission, a relator must show a clear legal right to the relief sought, and that that Commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record." *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 362, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). The court will not disturb the Commission's decision if there is "some evidence" to support it. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 10th Dist. No. 14AP-632, 2016-Ohio-83, ¶ 6. " 'Where a commission order is adequately explained and based on some evidence, * * * the order will

---

[1] Misidentified as "Objection No. 4" in relator's brief.

not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997). Thus, as long as some evidence supports the Commission's decision, this court must defer to the Commission.

{¶ 5} In making its determination, the resolution of disputed facts is within the final jurisdiction of the Commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982). The Commission may accept all, none, or any portion of an expert's report and is not required to give special weight or conclusive weight to any particular vocational or medical report. *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92 (1993). Indeed, the Supreme Court of Ohio has instructed:

> Reviewing courts must not micromanage the commission as it carries out the business of compensating for industrial/occupational injuries and illness. The commission is the exclusive evaluator of evidentiary weight and disability. Moreover, review of a commission order in mandamus is not *de novo*, and courts must defer to the commission's expertise in evaluating disability, not substitute their judgment for the commission's. Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.

(Citations omitted.) *State ex rel. Steele v. Indus. Comm.,* 10th Dist. No. 04AP-606, 2005-Ohio-4125, ¶ 7, quoting *Mobley,* 78 Ohio St.3d at 579, 584.

{¶ 6} The relevant inquiry in a determination of PTD is the applicant's ability to engage in any sustained remunerative employment. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 18, citing *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16; *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994); *State ex rel. Franta v. Indus. Comm.*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 6. The term "sustained" has not been precisely defined for workers' compensation purposes. In order to be considered sustained, remunerative activity does not have to occur on a regular or daily basis, but "[a]ny 'ongoing pattern' of activity can be categorized as sustained activity." *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 13, quoting *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 63. The Supreme Court has held that "part-time work constitutes sustained remunerative employment." *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d

360, 362 (1997).  Nevertheless, there is no bright-line numerical analysis for determining whether part-time work meets the qualifications for sustained remunerative employment in PTD cases; instead, the "commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis." *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 20.

**{¶ 7}** " 'Entitlement to [PTD] compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment.' " *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *State ex rel. LTV Steel Co.*, 65 Ohio St.3d 22, 24 (1992).  Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record."  *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173 (1987).  "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability."  (Emphasis omitted.)  *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994).  *See State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991)  ("While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.' ").  (Emphasis sic.)  Furthermore, the commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus.

**{¶ 8}** Freedom Center's objections present essentially the same arguments it made to the magistrate and do not raise any new legal issues based on the magistrate's conclusions.  Instead, relator simply disagrees with the magistrate's conclusions.  We address each of Freedom Center's objections in turn.

**{¶ 9}** In its first objection, Freedom Center contends that the magistrate erred in finding the record contains "some evidence" to support the Commission's approval of respondent's application for PTD.  We disagree.

{¶ 10} The Staff Hearing Officer ("SHO") relied on Dr. Kistler's report as "some evidence" in determining that Singletary was incapable of sustained remunerative employment of any type, including sedentary employment, and therefore was entitled to PTD. Freedom Center continues to argue (as it did in its brief) that Dr. Kistler's report cannot be "some evidence," because it is 1) ambiguous, and 2) internally inconsistent. As the magistrate found, neither of these arguments have merit.

{¶ 11} First, Freedom Center argues that the statements "diminished range of motion" and "decreased range of motion" pertaining to Singletary's restrictions related to her cervical spine, lumbar spine, and left shoulder are ambiguous. (Relator's Objs. at 3-4.) As the magistrate found, they are not. This is so because they are not "susceptible of more than one reasonable interpretation." *See Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40 (2001). What Freedom Center really means is that the statements are not specific enough—indeed, Freedom Center asserts they are ambiguous because they are "not quantified in any manner." (Relator's Objs. at 3-4.) But lack of specificity does not equate to ambiguity, and Freedom Center has not cited to any authority in support of this assertion. Similarly, Freedom Center has not cited to any authority for its inference that in order to be properly relied upon as "some evidence," Dr. Kistler should have measured Singletary's ranges of motion against the American Academy of Orthopedic Surgeons standards for normal range of motion.

{¶ 12} Furthermore, as the magistrate found, Freedom Center's reliance on *State ex rel. Seitaridis v. Delta Plating, Inc.*, 10th Dist. No. 10AP-494, 2011-Ohio-3593 is misplaced. In *Seitaridis*, this court found the specific restriction contained in the medical report relied upon by the Commission to be vague and ambiguous because it stated only "restrictions limited with use of right upper extremity." *Id.* at ¶ 15. This phrase is not akin to "diminished range of motion" or "decreased range of motion," because the latter phrases can mean only one thing. The restrictions cited in Dr. Kistler's report were not ambiguous and were not required to be quantified in the manner suggested by Freedom Center. Simply put, it is enough that Dr. Kistler found Singletary's restrictions pertaining to range of motion as cutting against her ability to engage in sustained remunerative employment, and the magistrate rightly rejected Freedom Center's argument on this point.

{¶ 13} Second, Freedom Center continues to argue that Dr. Kistler's report is internally inconsistent because he delineates Singletary's restrictions pertaining to her ability to sit, walk and stand, lift objects, or maintain static postures in his opinion section "for the first time" in the report without having previously set forth those restrictions in the history, examination or testing sections of his report. (Relator's Objs. at 4.) But as the magistrate found, the cases cited by Freedom Center in support of this argument are not applicable to the instant matter. As the magistrate explained,

> [b]oth [*State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-Ohio-6603] and [*State ex rel. O'Brien v. Cincinnati, Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841] dealt with internal inconsistencies of the type identified in *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96AP-29, 1996 Ohio App. LEXIS 3892 (Sept. 5, 1996), between the restrictions contained in the medical report and the concept of the ability to maintain sustained remunerative employment. This court has restated the salient principle articulated in *Libecap*, explaining that "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible (such as an inability to sit for more than 30 minutes), then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-684, 2004-Ohio-3841, ¶ 56. *See Howard*, 2004-Ohio-6603, at ¶ 9, quoting *State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14 (" 'Functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the "sedentary" category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment.' ").

(Mag.'s Decision at 11-12.)

{¶ 14} Thus, *Libecap* and its progeny, including *Howard*, *O'Brien*, and *Owens Corning*, were cases in which the medical report relied upon by the Commission set forth an opinion regarding the applicant's exertional category, e.g., "sedentary," which directly conflicted with the functional capacities of the applicant. The medical report relied upon by the Commission in this case does not implicate this circumstance. Put another way, as

the magistrate stated, "[i]n those cases, this court closely examined the medical report relied upon by the commission in determining whether there existed an apparent inconsistency between the medical restrictions contained in the report and the concept of the ability to maintain sustained remunerative employment. While additional detail in Dr. Kistler's report may be helpful in understanding the restrictions given alongside his finding that Singletary was incapable of sustained remunerative employment, the restrictions in the report are not inconsistent with the exertional capacities identified or the concept of sustained remunerative employment. *See generally State ex rel. Stallard Bales v. Indus. Comm. of Ohio*, 10th Dist. No. 15AP-418, 2017-Ohio-947, ¶ 47 (discussing inapplicability of *Libecap* due to the absence of a "Libecap-type" contradiction)." (Mag.'s Decision at 12-13.) In short, the magistrate properly rejected Freedom Center's argument on this point.

{¶ 15} Finally, under its first objection, Freedom Center asserts for the first time that even if the restrictions enumerated by Dr. Kistler pertaining to her ability to sit, walk and stand, lift objects, or maintain static postures "had some basis in the record and in his report, these restrictions and limitations do not establish that Singletary is incapable of performing sedentary work." (Relator's Objs. at 6.) Citing to *State ex rel. Kidd v. Indus. Comm.*, ___ Ohio St.3d ___, 2023-Ohio-2975, Freedom Center argues that Dr. Kistler's report is defective in that it did not properly address the standard of sedentary employment or explain why Singletary is not capable of performing sedentary work utilizing modern workplace innovations and accommodations. (Relator's Objs. at 6-9.) We observe that the *Kidd* decision was issued on August 29, 2023, after the magistrate had issued his decision on August 24, 2023. Thus, the magistrate was deprived of any opportunity to address this more recent case and, more importantly, the specific argument Freedom Center now makes in reliance upon it.[2] We further note that the docket shows that no notice of supplemental authority was filed by Freedom Center.

---

[2] In its merit brief, Freedom Center argued that "the Commission failed to properly consider and apply the legal definition for ability to perform sedentary work." (Relator's Brief at 22-27.) That argument, however, focused on the vocational rehabilitation closure report prepared by James Bartczak and the functional capacity assessment performed by Robert Crossmon. Although Freedom Center concludes in its merit brief that "neither Dr. Kistler's Report, the Bartczak Closure Report, or the Crossmon report establish that Singletary is not capable of sedentary work and remunerative employment," none of the discussion actually relates to Dr. Kistler's report or otherwise asserts what Freedom Center is now asserting via its objections. *Id.* at 27.

{¶ 16} This court has held repeatedly that an argument is waived when it is not asserted before a magistrate and is raised for the first time in objections to the magistrate's decision. *See State ex rel. McNew v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-404, 2022-Ohio-1859, ¶ 7 ("ODRC waived its trade secret exemption argument by failing to raise it before the magistrate."); *State ex rel. Maglis v. Indus. Comm.*, 10th Dist. No. 15AP-648, 2016-Ohio-4644, ¶ 10 (Relator did not argue before the magistrate that 10 weeks of death benefits was arbitrary or that the commission failed to provide an adequate explanation. Consequently, this argument is waived."); *State ex rel. German v. Provider Servs. Holdings, LLC*, 10th Dist. No. 13AP-149, 2014-Ohio-3336, ¶ 18 ("[R]elator argues for the first time here that the commission abused its discretion by not stating that the employer met its burden to demonstrate voluntary abandonment. Because relator failed to raise this issue before the magistrate, relator has waived this argument."); *State ex rel. Durbin v. Indus. Comm.*, 10th Dist. No. 10AP-712, 2012-Ohio-664, ¶ 11 ("Though relator's objections assert the magistrate erred in not addressing her contentions that the commission failed to exercise continuing jurisdiction on the basis of fraud, the issue was not raised by relator in either her complaint or merit brief. In accordance with [*State ex rel.*] *Hackenburg* [*v. Indus. Comm.*, 10th Dist. No. 06AP-938, 2007-Ohio-4181] and [*State ex rel.*] *Advantage Tank Lines* [*v. Indus. Comm.*, 10th Dist. No. 03AP-584, 2004-Ohio-3384], we conclude relator waived the issue by presenting it for the first time in the objections to the magistrate's decision."); *Hackenburg* at ¶ 4 ("[R]elator contends the commission abused its discretion when it determined she had reached [maximum medical improvement] as of January 13, 2006, based on the report of Dr. Martin. A review of relator's brief, however, discloses that she failed to raise this issue before the magistrate, and, therefore, it is considered waived."). Therefore, we find that Freedom Center has waived its argument that Dr. Kistler failed to address or apply the legal standard for sedentary work by failing to specifically raise it before the magistrate.

{¶ 17} Accordingly, based on the foregoing, Freedom Center's first objection is overruled.

{¶ 18} In its second objection, Freedom Center contends the magistrate erred in holding that the Commission's reliance on the report of James Bartczak, and the SHO's own speculation and medical conclusions as to matters not contained in the record only applied

to issues pertaining to the apportionment of the award between Singletary's claims, and/or were harmless error. This objection is meritless.

{¶ 19} As the magistrate found, the decision rendered by the SHO clearly states—twice—that its decision that Singletary was unable to maintain sustained remunerative employment and was entitled to PTD compensation was based solely on Dr. Kistler's report. As the magistrate pointed out, the SHO specifically stated:

> ***Based upon the report of Charles Kistler, D.O[.]*** (dated 03/03/2021), ***it is found that [Singletary] is unable to perform any sustained remunerative employment*** solely as a result of the medical impairment caused by the allowed physical conditions. Therefore, pursuant to *State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757, 598 N.E.2d 192 (10th Dist. 1992) and Memo G4 of the Adjudications Before the Ohio Industrial Commission, it is not necessary to discuss or analyze [Singletary's] non-medical disability factors.
>
> Permanent total disability compensation is awarded commencing 03/03/2021 ***based upon the [sic] Dr. Kistler's 03/03/2021 report***.

(Emphasis added.) (Mag.'s Decision at 14.) Freedom Center's argument that these specific statements should be disregarded when reviewing the entirety of the SHO's decision is simply not persuasive and should be rejected. Instead, and as the magistrate found, the section of the SHO's decision which discusses Bartczak's vocational rehabilitation closure report is plainly set forth *after* the SHO had already made the determination that Singletary is incapable of sustained remunerative employment, in the context of discussing the proper allocation of the cost of the award of PTD compensation amongst Singletary's three separate claims.[3]

{¶ 20} Furthermore, we agree with the magistrate that even if the SHO had relied upon Bartczak's report in the context of the requirement of R.C. 4123.58(D)(4) to consider educational or rehabilitative efforts to enhance the employee's employability, such reliance would be harmless. This is so because in this case, the SHO had already determined that Singletary was unable to engage in sustained remunerative employment solely as a result of the medical impairment due to the allowed conditions. As the

---

[3] As set forth in the Findings of Fact, the "SHO apportioned the cost of the award with 80 percent allocated [to] the 2005 claim, 20 percent to the 1996 claim, and none to the 1994 claim." (Mag.'s Decision at 6.)

magistrate discussed, we have previously found that once the SHO "found, based on the medical evidence, that claimant was physically incapable of sustained remunerative activity," it was "not then required to consider non-medical factors, which would have included claimant's education and vocational aptitude." *State ex rel. Ohio State Univ. v. Indus. Comm.*, 10th Dist. No. 07AP-856, 2008-Ohio-2427, ¶ 4.  Thus, as the magistrate found, "any error in the SHO's findings under R.C. 4123.58(D)(4) with regard to Bartczak's vocational rehabilitation closure report is not material and, therefore, is harmless. *See State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 15 (finding SHO's error to be harmless because the relator failed to demonstrate that, absent the error, the outcome of the proceedings would have differed)." (Mag.'s Decision at 15.)  In short, the magistrate did not err in finding that the SHO did not rely upon Bartzcak's vocational closure report in making its determination that Singletary was not able to perform sustained remunerative employment, and even if the SHO did so, such reliance was harmless.

{¶ 21} Finally, Freedom Center's assertion that the SHO improperly relied upon his own personal speculation and medical opinions is without merit, and the magistrate did not err in rejecting this contention.  Freedom Center's complaint on this point stems from a single statement in the SHO's decision that "[t]he [SHO] further finds [the 2005 claim] and [the 1996 claim] (unlike the allowed physical conditions in [the 1994 claim]) involve degenerative and arthritic conditions that are expected to worsen over time." (Mag.'s Decision at 16.) We wholly agree with the magistrate that "the statement regarding the degenerative condition was made in the context of discussing the apportionment of the award between Singletary's claims. Thus, read in context, the statement was not made for purposes of finding Singletary was precluded from sustained remunerative employment, but in understanding the apportionment of the award." *Id.* We likewise agree with the magistrate that because "the SHO relied on medical evidence that supports the finding that relator was precluded from sustained remunerative employment based on the allowed conditions [and therefore] some evidence supports the finding that relator was incapable of performing sustained remunerative employment, any error in making the challenged statement, which was made in the context of apportionment of the award, was harmless." *Id.*, citing *Casey* at ¶ 15.

{¶ 22} Accordingly, based on the foregoing, Freedom Center's second objection is overruled.

{¶ 23} Lastly, in its third objection, Freedom Center asserts the magistrate erred in holding there was "some evidence" to support the Commission's approval of Singletary's application for PTD when there is evidence in the record of activities so medically inconsistent with the disability evidence, that they impeach the medical evidence underlying the award. This objection is easily dispensed with.

{¶ 24} As the magistrate properly observed, and as set forth above, the Commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the Commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. Even if there is any inconsistency within the body of evidence across the entire record, this goes to issues of weight and credibility, a determination exclusively reserved to the Commission. *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 407, 2019-Ohio-1270, ¶ 14, quoting *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996) (stating that " '[a]n order that is supported by "some evidence" will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.' ").

{¶ 25} As discussed above in overruling Freedom Center's first objection, in this case, Dr. Kistler's report is "some evidence" upon which the Commission properly relied in finding that Singletary was entitled to PTD benefits. Therefore, even if there is other evidence in the record that appears contradictory to that relied upon by the Commission, that is immaterial to the Commission's determination.

{¶ 26} Accordingly, Freedom Center's third objection is overruled.

{¶ 27} For all these reasons, we overrule relator's three objections. Having conducted an examination of the magistrate's decision and an independent review of the evidence, pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Therefore, we adopt the magistrate's decision as our own, including the

findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

MENTEL, P.J., and LELAND, J., concur.

————————————

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Freedom Center, State of Ohio, | : | |
| Relator, | : | No. 22AP-87 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on August 24, 2023

---

*Mann & Carducci Co., LPA,* and *Robert J. Mann,* and *Mark M. McCarthy*, for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

*Lelli Law Office,* and *Craig T. Lelli,* for respondent Debra J. Singletary.

---

### IN MANDAMUS

{¶ 28} Relator, Freedom Center, State of Ohio ("Freedom Center"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Debra J. Singletary. Over the course of slightly more than a decade, Singletary sustained injuries in three workplace incidents, leading to her application for PTD compensation that forms the subject of the instant action in mandamus.

**I. Findings of Fact**

{¶ 29} 1. On December 1, 1994, Singletary sustained an injury due to a fall in the course of and arising out of her employment with the Department of Youth Services. Singletary's workers' compensation claim ("the 1994 claim") was allowed for the following conditions: "lumbar strain; left arm contusion; aggravation of pre-existing cervical and thoracic strains; aggravation of pre-existing generalized anxiety disorder with obsessive-compulsive features; adjustment disorder with depressed mood." (R. 52 at 1.)[4]

{¶ 30} 2. On December 2, 1996, Singletary sustained a second injury due to a fall in the course of and arising out of her employment with Independence Hall. Singletary's workers' compensation claim from this second incident ("the 1996 claim"), was allowed for the following conditions: "contusion of right hip; sprain of right knee and leg; right knee patella-femoral joint chondromalacia; right knee patellofemoral joint osteoarthritis." (R. 52 at 1.)

{¶ 31} 3. On September 21, 2005, Singletary sustained a third injury in the course of and arising out of her employment with Freedom Center while breaking up a fight. Singletary's workers' compensation claim from this third incident ("the 2005 claim"), was allowed for the following conditions: "lumbar, cervical, and dorsal sprain/strain; left shoulder sprain/strain; bilateral knee contusions; aggravation of pre-existing degenerative joint disease left shoulder resulting in impingement syndrome of the left shoulder; subacromial subdeltoid bursitis left shoulder; partial rotator cuff tear supraspinatus tendon left shoulder; lateral meniscal degeneration of the left knee, medial meniscal degeneration of the left knee and aggravation of pre-existing degenerative changes at the patella articular cartilage of the left knee; aggravation pre-existing cervical degenerative disc disease C5-6; aggravation pre-existing degenerative joint disease C5-6; left cervical C6 radiculopathy; osteoarthritis of the left knee; left tibial neuropathy and left tibial nerve lesion." (R. 52 at 1.)

{¶ 32} 4. A functional capacity assessment of Singletary was performed by Robert Crossmon, OTR/L, LMT, CEAS II, on February 4, 2021. Crossmon found that Singletary's "physical capacities were tested to within the less than sedentary strength range for

---

[4] The stipulated record in this case contains sequentially numbered documents corresponding to a table of contents. However, the pages of the documents are not individually numbered throughout the record. This fails to comply with the March 14, 2022 magistrate's order in this case requiring that "each page of evidence shall be numbered." Nevertheless, as the documents in the record are discernable from their record number and the table of contents, they will be referred to by their record number with page numbers applied to each individual record. Additionally, the magistrate notes the parties filed a supplemental stipulation of the evidence on December 5, 2022 in order to provide the court with legible copies of the commission orders in this matter in compliance with Loc.R. 13(G) of the Tenth District Court of Appeals.

occasional lifting of up to 9 lbs. from thigh to shoulder level, up to 8 lbs. from knee level, up to 5 lbs. from below knee level, and negligible to above shoulder level, with frequent lifting being negligible through all levels." (Emphasis removed.) (R. 57 at 4.) Singletary was also found to be able to "[c]arry up to 8 lbs. at an occasional rate" and "[p]ush up to 8 lbs. of force and pull up to 6 lbs. of force at an occasional rate." (R. 57 at 4.) Crossmon noted "[l]imited endurance and work tolerance levels" and primary functional deficits including "limited tolerance to lifting, carrying, pushing, pulling, squatting, forward bending, low level work, overhead work, repetitive use of left hand, standing and walking." (R. 57 at 4.) In addition to recommendations related to lifting, carrying, and pushing, Crossmon made recommendations including: "[a]lternate standing/walking with sitting every 20 min to help reduce low back and lower extremity stresses"; "Interrupt tasks with short breaks to allow for muscle and joint recovery"; "[l]imit stair climbing"; and "[u]se at least one handrail (two preferred), avoid carrying objects and have another person nearby when climbing stairs; avoid ladder climbing, not recommended." (R. 57 at 4.)

{¶ 33} 5. A vocational rehabilitation closure report was prepared by James Bartczak, CRC, which listed February 25, 2021 as the date of the rehabilitation case closure. Bartczak referenced Crossmon's functional capacity assessment report. Specifically, Bartczak found:

> Regarding her ability to perform work within her current physical capacities Ms. Singletary faces numerous and steep barriers to employment. Of significant concern are the recommendations that she interrupt tasks with short breaks, and regularly alternate between standing, walking, and sitting every twenty minutes. These limitations along with a compromised tolerance to prolonged sitting result in the potential to take her off task at a frequency not generally acceptable for the maintenance of gainful employment. Ms. Singletary is found to have significant limitation relative to the repetitive use of her left hand further eroding her ability to perform sedentary work. At fifty-nine years of age, with the inability to perform prior work in her vocational history and less than sedentary physical capacities, Ms. Singletary faces a vocational adjustment of an extent that does not appear to be feasible to this vocational rehabilitation counselor, particularly in the absence of highly marketable transferrable skills. She does not present as a feasible candidate for retraining. The field case manager is unable to recommend or establish a feasible vocational goal. Therefore, the recommendation is to close this file as Ms. Singletary is not a suitable candidate for

participation in a comprehensive vocational rehabilitation program designed to result in her actual return to employment.

(R. 56 at 2.)

{¶ 34} 6. Singletary filed an IC-2 application for compensation for PTD supported by the report of Charles J. Kistler, D.O., dated March 3, 2021. Dr. Kistler conducted an examination of Singletary, making the following findings:

> There are some paresthesias of the left leg and lower extremities. The extremities show the patient is right-hand dominant. The cervical spine shows diminished range of motion in forward bending, back bending, right side-bending, left side-bending, right rotation and left rotation. The biceps and triceps reflexes are +2. The pulses are +2.
>
> The dorsal spine shows kyphosis and lordosis with paravertebral muscular spasm. The left shoulder shows decreased range of motion, as did the right shoulder. There is some crepitus. The right rotator cuff shows repair. The knee shows edema, pain, crepitus, scarring from previous surgery on the left knee.
>
> The lumbar spine shows diminished range of motion and myospasm. There are paresthesias at the left knee and the ankle. She has evidence of medial and lateral meniscal injury in the left knee. She has evidence of degenerative joint disease in the shoulders. She has impingement syndrome in the left shoulder, patellar problems in the left knee, degenerative disk disease at C5-C6. She has a C6 cervical radiculopathy, osteoarthritis and tibial neuropathy and nerve lesion. There is also evidence of pain in the right hip and in the right knee and there is evidence of right knee patellofemoral joint chondromalacia.

(R. 57 at 2.) After listing the allowed conditions in the 1996 claim and 2005 claim, Dr. Kistler found that Singletary "has an inability from these injuries to sit more than 15 minutes at a time, inability to walk more than 10 minutes at a time, inability to stand more than 10 minutes at a time, inability to lift more than 5-8 pounds and the inability to maintain static postures for long periods of time and her high level of pain would cause her difficulties." (R. 57 at 3.) Therefore, Dr. Kistler found Singletary to be permanently and totally impaired from any and all sustained remunerative employment solely as a result of the injuries in the claims.

{¶ 35} 7. A psychological examination of Singletary was conducted by Sudhir Dubey, PsyD., on May 11, 2021. Dr. Dubey found from a psychological perspective, Singletary was capable of sustained remunerative employment and was not permanently and totally disabled as a result of the allowed psychological conditions in the claim.

{¶ 36} 8. A medical examination of Singletary was performed by Dean W. Erickson, M.D., on May 20, 2021. Dr. Erickson further stated that Singletary was permanently and totally disabled from work as a juvenile corrections officer as a direct and sole result of the allowed physical conditions. However, Dr. Erickson found Singletary was capable of sustained remunerative employment at a sedentary to light level, noting Singletary was capable of lifting, carrying, pushing, and pulling 15 pounds occasionally and 10 pounds frequently with limitations on prolonged neutral spine position and repetitive spine motions.

{¶ 37} 9. Following an examination of Singletary on July 20, 2021, Mini B. Goddard, M.D., produced a commission musculoskeletal specialist report. In the report, Dr. Goddard found relator had a combined whole person impairment of 39 percent based on the allowed physical conditions. Dr. Goddard concluded Singletary was capable of sedentary work based on the allowed conditions, noting that because of the significant motor weakness and numbness involving the left tibial nerve distribution, it would not be safe for Singletary to do any considerable walking or standing.

{¶ 38} 10. John M. Malinky, Ph.D., produced a commission mental and behavioral specialist report following a July 21, 2021 examination of Singletary. Dr. Malinky found Singletary was at maximum medical improvement and had a whole person impairment of 15 percent due to the allowed mental and behavioral conditions. Dr. Malinky concluded Singletary was capable of simple, low stress work.

{¶ 39} 11. In a report dated September 18, 2021, William T. Darling, Ph.D., provided a vocational opinion with regard to the allowed conditions in the claims. Dr. Darling concluded that "someone of Debra Singletary's vocational and industrial-injury profile, if so motivated, should be considered capable of sustained, remunerative employment in positions commensurate with her current capabilities and presumed restrictions," and, "[a]s such I would not consider her to be permanently, totally disabled." (R. 51 at 5.)

{¶ 40} 12. On October 20, 2021, a commission staff hearing officer ("SHO") conducted a hearing on Singletary's application for PTD compensation. In an order mailed

October 27, 2021, the SHO granted the application and awarded compensation beginning March 3, 2021. The SHO apportioned the cost of the award with 80 percent allocated the 2005 claim, 20 percent to the 1996 claim, and none to the 1994 claim. The SHO based the apportionment on the fact that only the 1996 and 2005 claims resulted in multiple surgeries, remained the subject of active treatment, and "involve[d] degenerative and arthritic conditions that are expected to worsen over time." (R. 52 at 2.) Based on the March 3, 2021 report of Dr. Kistler, the SHO found Singletary was unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical conditions, and therefore declined to analyze Singletary's nonmedical disability factors.

{¶ 41} The SHO found the 2005 claim involved more serious medical conditions involving more body parts than the 1996 claim, and as such, the 2005 claim would "directly impact [Singletary's] ability to do even sedentary work more so than [the allowed conditions in the 1996 claim]." (R. 52 at 2.) The SHO stated that Singletary returned to work for only a relatively brief period of time following the injuries sustained in the 2005 claim. The SHO found Singletary had not worked in any capacity since 2017 because of the 2005 claim's allowed conditions, noting that prior to the brief return to work, the 2005 allowed conditions had rendered Singletary unable to return to her former position of employment for over six years from the date of the injury until December 2012.

{¶ 42} With regard to vocational rehabilitation, the SHO found Singletary last attempted participating in services through the 2005 claim, but the serious nature of the allowed conditions in that claim rendered vocational rehabilitation services infeasible as described in Bartczak's February 25, 2021 report. Specifically, such services were infeasible because Singletary's "physical capacities for work were found to be in the less-than-sedentary demand category and, most notably, [Singletary] demonstrated poor tolerance to sustained sitting." (R. 52 at 2.) On this basis, the SHO found the allowed left shoulder, left knee, and cervical conditions in the 2005 claim would directly impact Singletary's ability to do sedentary work more than the right hip and right knee conditions in the 1996 claim.

{¶ 43} The SHO found there existed no persuasive evidence Singletary was unable to engage in sustained remunerative employment due to physical or psychological impairments unrelated to the industrial injury or solely due to Singletary's age. The SHO

found no persuasive evidence Singletary retired or was otherwise not working for reasons unrelated to the industrial injury. Finally, the SHO found there existed no persuasive evidence that failure to engage in educational or rehabilitative efforts to enhance employability prohibited Singletary from receiving PTD compensation.

{¶ 44} 13. The commission denied a request for reconsideration in a November 26, 2021 order, finding the request failed to meet the criteria contained in commission resolution R18-1-06.

{¶ 45} 14. Freedom Center filed the instant action in mandamus on February 8, 2022.

## II. Discussion and Conclusions of Law

{¶ 46} Freedom Center seeks a writ of mandamus ordering the commission to deny relator's application for PTD.

### A. Requirements for Mandamus

{¶ 47} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

### B. Permanent Total Disability under Workers' Compensation Law

{¶ 48} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do *any* sustained remunerative work." (Emphasis sic.) *State ex rel. Schultz v. Indus. Comm.*, 96 Ohio St.3d 27, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Ohio Adm.Code 4121-3-34(B)(1).

{¶ 49} R.C. 4123.58 governs compensation for PTD, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;

> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C). PTD compensation is prohibited when the reason the applicant is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:

> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

> (2) Solely the employee's age or aging;

> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease[;]

> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 50} Ohio Adm.Code 4121-3-34 governs the processing and adjudication of applications for PTD.[5] Ohio Adm.Code 4121-3-34(B)(2) provides a classification of physical demands of work, separating the demands into five classes: sedentary work, light work, medium work, heavy work, and very heavy work. "Sedentary work" is defined as:

> [E]xerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

---

[5] Ohio Adm.Code 4121-3-34 has been amended since relator filed her application for PTD. However, the changes are not material to the question presented in this case.

Ohio Adm.Code 4121-3-34(B)(2)(a). The application must "identify, if already on file, or be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition(s), that supports an application for compensation for permanent total disability." Ohio Adm.Code 4121-3-34(C)(1). *See State ex rel. Kent State Univ. v. Indus. Comm.*, 10th Dist. No. 15AP-416, 2016-Ohio-1032 (stating that under Ohio Adm.Code 4121-3-34(C)(1) an application can be dismissed if it is filed without the required medical evidence). The applicant bears the burden to prove permanent total disability by establishing under a preponderance of the evidence that the disability is permanent and that the inability to work is causally related to the allowed conditions. Ohio Adm.Code 4121-3-34(D)(3)(a). *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, ¶ 16; *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23 (1992).

{¶ 51} The relevant inquiry in PTD cases is whether the applicant engages in or is medically capable of sustained remunerative employment. *Seibert,* 2019-Ohio-3341, at ¶ 18, citing *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 16; *State ex rel. Franta v. Indus. Comm. of Ohio*, 10th Dist. No. 19AP-530, 2021-Ohio-1501, ¶ 6. The term "sustained" has not been precisely defined for workers' compensation purposes. In order to be considered sustained, remunerative activity does not have to occur on a regular or daily basis, but "any 'ongoing pattern' of activity can be categorized as sustained activity." *State ex rel. McNea v. Indus. Comm.*, 131 Ohio St.3d 408, 2012-Ohio-1296, ¶ 13, quoting *Schultz,* 2002-Ohio-3316, at ¶ 63. The Supreme Court of Ohio has held that "part-time work constitutes sustained remunerative employment." *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997). Importantly, however, there is no bright-line numerical analysis for determining whether part-time work meets the qualifications for sustained remunerative employment in PTD cases. *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 20 (stating that "there is no hourly standard for determining one's capability to perform sustained remunerative employment on a part-time basis," but rather the "commission decides whether a claimant is capable of sustained remunerative employment on a case-by-case basis").

{¶ 52} " 'Entitlement to permanent total disability compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative

employment.' " *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 455 (1993), quoting *LTV Steel Co.*, 65 Ohio St.3d at 24. Nonmedical factors include the "claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record." *Stephenson*, 31 Ohio St.3d at 173. "[A] claimant's medical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315, 321 (1994). *See State ex rel. Navistar, Inc. v. Indus. Comm.*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 23, quoting *State ex rel. Galion Mfg. Div., Dresser Indus., Inc. v. Haygood*, 60 Ohio St.3d 38, 40 (1991) ("While the commission may not *deny* PTD compensation without considering nonmedical factors, it may *grant* PTD compensation without considering nonmedical factors when 'medical factors alone preclude sustained remunerative employment.' " (Emphasis sic.)). Furthermore, the commission is required to "specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), paragraph one of the syllabus.

## C. Application

{¶ 53} Freedom Center raises several points in arguing the commission acted contrary to law and abused its discretion by granting Singletary's application for PTD compensation. First, Freedom Center argues that the commission abused its discretion by relying on Dr. Kistler's findings because they are contradictory and ambiguous.

{¶ 54} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*. However, in reaching its determination, the commission cannot rely on a medical opinion that is equivocal or internally inconsistent. *George*, 2011-Ohio-6036, at ¶ 11. *See State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994); *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994).

{¶ 55} "[E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement." *Eberhardt*

at 657. However, ambiguous statements are considered equivocal only while unclarified. Equivocal medical opinions "are of no probative value" and, thus, "are not evidence." *Id.*

**{¶ 56}** "A statement is ambiguous if it is 'susceptible of more than one reasonable interpretation.' " *State ex rel. Pilarczyk v. Geauga Cty.*, 157 Ohio St.3d 191, 2019-Ohio-2880, ¶ 15, quoting *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40 (2001). Ambiguous statements are "inherently different" from repudiated, contradictory, or uncertain statements. *Eberhardt* at 657. Repudiated, contradictory, or uncertain statements "reveal that the doctor is not sure what [the doctor] means," and, as a result, "are inherently unreliable." *Eberhardt* at 657. On the other hand, as ambiguous statements do not relate to the doctor's position but instead to the doctor's communication skills, such statements "merely reveal that the doctor did not effectively convey what [was] meant," and, as a result, "are not inherently unreliable." *Id.*

**{¶ 57}** Freedom Center takes issue with the restrictions listed in Dr. Kistler's report, stating that "these assertions are contained in the ___***opinion*___ section" of the report. (Emphasis sic.) (Freedom Center Brief at 19.) Freedom Center states that "[t]here is no history where these limitations are set forth, no clinical or other testing that establish these limitations, nothing is cited in the section on his physical examination of Singletary, these limitations literally appear out of nowhere in his opinion section." (Freedom Center Brief at 19.) In support of its arguments, Freedom Center cites to this court's decisions in *State ex rel. Howard v. Millennium Inorganic Chems.*, 10th Dist. No. 03AP-637, 2004-Ohio-6603, and *State ex rel. O'Brien v. Cincinnati, Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841. The magistrate finds these cases to be inapposite.

**{¶ 58}** Both *Howard* and *O'Brien* dealt with internal inconsistencies of the type identified in *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96AP-29, 1996 Ohio App. LEXIS 3892 (Sept. 5, 1996), between the restrictions contained in the medical report and the concept of the ability to maintain sustained remunerative employment. This court has restated the salient principle articulated in *Libecap*, explaining that "where a physician places the claimant generally in the sedentary category but has set forth functional capacities so limited that no sedentary work is really feasible (such as an inability to sit for more than 30 minutes), then the commission does not have discretion to conclude based on that report that the claimant can perform sustained remunerative work of a sedentary nature." *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 10th Dist. No. 03AP-

684, 2004-Ohio-3841, ¶ 56. *See Howard*, 2004-Ohio-6603, at ¶ 9, quoting *State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 14 (" 'Functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. * * * [That is,] regardless of the fact that the physician placed claimant in the "sedentary" category, the specific restrictions [may be] so narrow as to preclude sustained remunerative employment.' "). The court's analysis in *Libecap* has been further summarized as follows:

> "In *Libecap*, the problem was not that the doctor's report was defective because claimant was placed in the sedentary category. Doctors may be unaware of legal criteria and the doctor in that case had set forth clear and unambiguous functional restrictions in his discussion that would permit short periods of sedentary activity. Rather, the problem was with the *commission's* finding of capacity for sedentary, sustained remunerative employment based on a report that, read in its entirety, clearly precluded sustained remunerative employment of a sedentary nature.
>
> Conversely, where a physician's checklist states that the claimant is medically precluded from performing any sustained remunerative employment but where the narrative report, read in its entirety, clearly and unambiguously sets forth a capacity for sustained remunerative employment, then the commission lacks discretion to rely on that report for a finding of medical inability to perform any sustained remunerative employment."

(Emphasis sic.) *Howard* at ¶ 9, quoting *Owens Corning* at ¶ 56-57. Thus, in that context, this court has stated the " 'commission cannot simply rely on a physician's "bottom line" identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report.' " *Howard* at ¶ 9, quoting *Owens Corning* at 56. *But see O'Brien*, 2008-Ohio-2841, at ¶ 9 ("[A] medical report may constitute evidence on which the [commission] may rely when the physician simply opines the claimant was limited to 'sedentary work' and provides no further details of the claimant's various functional restrictions.").

{¶ 59} *Libecap* and its progeny, including *Howard, Owens Corning*, and *O'Brien*, are not implicated by the circumstances in this case. In those cases, this court closely examined the medical report relied upon by the commission in determining whether there existed an apparent inconsistency between the medical restrictions contained in the report

and the concept of the ability to maintain sustained remunerative employment. While additional detail in Dr. Kistler's report may be helpful in understanding the restrictions given alongside his finding that Singletary was incapable of sustained remunerative employment, the restrictions in the report are not inconsistent with the exertional capacities identified or the concept of sustained remunerative employment. *See generally State ex rel. Stallard Bales v. Indus. Comm. of Ohio*, 10th Dist. No. 15AP-418, 2017-Ohio-947, ¶ 47 (discussing inapplicability of *Libecap* due to the absence of a "Libecap-type" contradiction).

{¶ 60} Freedom Center argues the conclusions in the report are "literally contradicted and refuted by ***EVERYTHING*** in the record, including Singletary's own statements." (Emphasis sic.) (Freedom Center Brief at 19.) This is not an internal inconsistency in a medical report, but instead, insofar as it reflects a discrepancy in the evidence, goes to weight and credibility. That determination is exclusively reserved to the commission. *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14, quoting *Pass*, 74 Ohio St.3d at 376 (stating that " '[a]n order that is supported by "some evidence" will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's' " (Brackets sic.)); *Bonnlander*, 2020-Ohio-4269, at ¶ 24. The SHO was clear in finding the report to be persuasive and is not the role of a court in mandamus to second-guess that determination.

{¶ 61} Freedom Center additionally argues Dr. Kistler's report contains "vague and ambiguous references to alleged 'diminished range of motion' and 'decreased range of motion' with no quantification of any kind as to the degrees, limits, and extent of the range of motion." (Freedom Center Brief at 21.) These statements are neither equivocal nor ambiguous, as they are not susceptible to more than one reasonable interpretation. Freedom Center cites to *State ex rel. Seitaridis v. Delta Plating, Inc.*, 10th Dist. No. 10AP-494, 2011-Ohio-3593, in arguing that the SHO could not analyze the limitations in Dr. Kistler's report without Dr. Kistler having quantified the diminished range of motion and decreased range of motion referred to in the report. In *Seitaridis*, this court found the specific restriction contained in the medical report relied upon by the commission to be vague and ambiguous because it stated only "restrictions limited with use of right upper extremity." *Id.* at ¶ 15. No such vague or ambiguous restrictions appear in this case. As a

result, *Seitaridis* is inapposite. Thus, the magistrate concludes Dr. Kistler's report was some evidence on which the commission could rely in determining Singletary was unable to maintain sustained remunerative employment.

**{¶ 62}** Next, Freedom Center argues the commission acted contrary to law and abused its discretion with regard to Bartczak's vocational rehabilitation closure report. Freedom Center argues that "[i]n addition to the issues with Dr. Kistler's report previously discussed, the SHO further relied upon the February 19, 2021, Closure Report of James Bartczak." (Freedom Center Brief at 23.) Specifically, Freedom Center argues the SHO erred "in relying on" this report to "support a finding that Singletary allegedly is in the 'less-than-sedentary demand category' " because Bartczak's report (1) relied on Crossmon's report that failed to properly identify and apply the definition of sedentary work, and (2) was based on a condition that was not part of an allowed claim. (Freedom Center Brief at 23.) Freedom Center argues that the commission's order is contrary to law because Bartczak and Crossmon's reports "in fact establish that Singletary is capable of sedentary work." (Freedom Center Brief at 27.)

**{¶ 63}** Importantly, the SHO did not rely on Bartczak's vocational rehabilitation closure report in reaching the conclusion that Singletary was unable to maintain sustained remunerative employment. Rather, the SHO specifically stated:

> Based upon the report of Charles Kistler, D.O[.] (dated 03/03/2021), it is found that [Singletary] is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed physical conditions. Therefore, pursuant to *State ex rel. Speelman v. Indus. Comm*, 73 Ohio App.3d 757, 598 N.E.2d 192 (10th Dist. 1992) and Memo G4 of the Adjudications Before the Ohio Industrial Commission, it is not necessary to discuss or analyze [Singletary's] non-medical disability factors.
>
> Permanent total disability compensation is awarded commencing 03/03/2021 based upon the [sic] Dr. Kistler's 03/03/2021 report.

(R. 52 at 2.) The SHO's discussion of Bartczak's vocational rehabilitation closure report occurred after this finding in the context of allocation, but before the SHO's discussion of factors under R.C. 4123.58(D).[6] Because the SHO did not rely on Bartczak's report to find

---

[6] The magistrate notes that Freedom Center does not argue that it was error to refer to Bartczak's report in the context of the allocation of the cost of the award.

relator was unable to perform sustained remunerative employment, Freedom Center's argument is without merit.

{¶ 64} Furthermore, any error in relying on Bartczak's report in the context of R.C. 4123.58(D)(4) is harmless. In *State ex rel. Ohio State Univ. v. Indus. Comm.*, 10th Dist. No. 07AP-856, 2008-Ohio-2427, this court considered an employer's argument that the SHO abused its discretion by not considering the claimant's alleged failure to participate in vocational rehabilitation. The court noted the requirement of R.C. 4123.58(D)(4) to consider educational or rehabilitative efforts to enhance the employee's employability, but found the "claimant's employability was not at issue here." *Id*. at ¶ 4. This court stated that once the SHO "found, based on the medical evidence, that claimant was physically incapable of sustained remunerative activity," it was "not then required to consider non-medical factors, which would have included claimant's education and vocational aptitude." *Id*. The court distinguished prior cases requiring consideration of nonmedical factors because, in each of those cases, the claimant had been found to be physically capable of employment. Because nonmedical factors were at issue in those prior cases, the commission was required to consider the claimants' educational and rehabilitative efforts. Thus, the court found those prior cases were "not persuasive authority here because the SHO concluded that claimant was incapable of sustained remunerative employment based on medical factors alone." *Id*. at ¶ 5.

{¶ 65} Here, as in *Ohio State*, the SHO found based solely on the medical evidence that Singletary was physically incapable of sustained remunerative employment. Because Singletary's employability was not at issue, it was not necessary to consider Singletary's educational and rehabilitative efforts. *Ohio State* at ¶ 4-5; *State ex rel. Honda of Am. Mfg. v. Indus. Comm.*, 10th Dist. No. 18AP-4, 2019-Ohio-1006, ¶ 6, 68. *See also State ex rel. R&L Carriers Shared Servs., L.L.C. v. Indus. Comm. of Ohio*, 151 Ohio St.3d 568, 2017-Ohio-5833, ¶ 19; *Bonnlander*, 2020-Ohio-4269, at ¶ 18; *Galion,* 60 Ohio St.3d at 40. Thus, any error in the SHO's findings under R.C. 4123.58(D)(4) with regard to Bartczak's vocational rehabilitation closure report is not material and, therefore, is harmless. *See State ex rel. Casey v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 15 (finding SHO's error to be harmless because the relator failed to demonstrate that, absent the error, the outcome of the proceedings would have differed); *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶ 17 (10th Dist.) ("When avoidance of

the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party."). Freedom Center has failed to establish a clear legal right to relief on this basis.

{¶ 66} Finally, Freedom Center argues the commission acted contrary to law and abused its discretion by making personal medical conclusions not based on any medical evidence in the record and addressing future conditions which may not occur. Specifically, Freedom Center points to the following statement in the SHO's order: "The [SHO] further finds [the 2005 claim] and [the 1996 claim] (unlike the allowed physical conditions in [the 1994 claim]) involve degenerative and arthritic conditions that are expected to worsen over time." (R. 52 at 2.) Freedom Center's argument is without merit. First, the statement regarding the degenerative condition was made in the context of discussing the apportionment of the award between Singletary's claims. Thus, read in context, the statement was not made for purposes of finding Singletary was precluded from sustained remunerative employment, but in understanding the apportionment of the award. Furthermore, as previously mentioned, the SHO relied on medical evidence that supports the finding that relator was precluded from sustained remunerative employment based on the allowed conditions. Because some evidence supports the finding that relator was incapable of performing sustained remunerative employment, any error in making the challenged statement, which was made in the context of apportionment of the award, was harmless. *See Casey* at ¶ 15.

### D. Conclusion

{¶ 67} Based on the foregoing, Freedom Center has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that Freedom Center's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.